Aaron M. Kinikini (10225)
Erin B. Sullivan (15462)
DISABILITY LAW CENTER
205 North 400 West
Salt Lake City, Utah  84103
Telephone:  (801) 363-1347
Fax: (801) 363-1437
Email: akinikini@disabilitylawcenter.org
        esullivan@disabilitylawcenter.org

Alan L. Sullivan (3152)
Jared C. Fields (10115)
Bret Evans (15131)
SNELL & WILMER L.L.P.
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, Utah  84101
Telephone:  801.257.1900
Facsimile:  801.257.1800
Email: asullivan@swlaw.com
        jfields@swlaw.com
        brevans@swlaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT IN AND FOR
## THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DISABILITY LAW CENTER, a Utah nonprofit corporation; S.B., an individual, by and through his next friend Margaret Goodman; A.U., by and through his next friend Mary Eka; and S.W., an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> STATE OF UTAH; UTAH DEPARTMENT OF HUMAN SERVICES; ANN WILLIAMSON, in her official capacity as Executive Director of the Utah Department of Human Services; UTAH DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH; DOUGLAS THOMAS, in his official capacity as Director of the Utah | **42 U.S.C. § 1983 COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> **CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** <br><br> Case No. 2:15-cv-00645-RJS <br><br> Judge Robert J. Shelby |

Division of Substance Abuse and Mental Health; UTAH STATE HOSPITAL; DALLAS EARNSHAW, in his official capacity as Superintendent of Utah State Hospital,

Defendants.

Plaintiff Disability Law Center (the "DLC") and Plaintiffs S.B., A.U., and S.W., each of whom appears individually and on behalf of all others similarly situated, hereby complain of Defendants State of Utah; Utah Department of Health Services ("DHS") and its Executive Director Ann Williamson; Utah Division of Substance Abuse and Mental Health ("SAMH") and its Director Douglas Thomas; and the Utah State Hospital ("USH") and its Superintendent Dallas Earnshaw, and allege as follows:

## NATURE OF THE ACTION

1.      In this action, Plaintiffs seek an Order of the Court declaring the rights of the parties and enjoining the State of Utah and its agencies from unconstitutionally delaying psychiatric treatment for dozens of inmates with mental illness who, like the individual Plaintiffs identified below, have been charged with criminal offenses, but who have been determined incompetent to stand trial.  Under color of state law, the State of Utah and the other Defendants have deprived the individual Plaintiffs and the members of the class of inmates they represent of their right to due process of laws, secured under the Fourteenth Amendment to the United States Constitution and Article I, §7 of the Utah Constitution.

2.      When an individual charged with a crime is found to be incompetent to stand trial, Defendant USH is responsible for providing treatment in an effort to restore the individual to competency.  Defendant USH is the only facility in the state authorized to perform such competency restoration treatment.

2

3.     For years, Defendant USH has failed to provide competency restoration treatment within a reasonable period of time from the date of the court order requiring treatment, as measured against nationally-recognized standards.  Individuals who are adjudged incompetent are placed on a waiting list for months, during which they remain confined in a municipal or county jail until a bed at Defendant USH's Forensic Facility becomes available.  It is not uncommon for these individuals to wait in jail for six months or more after issuance of the order committing them for treatment until Defendant USH accepts custody.  In fact, in some cases these individuals with mental illness are held in jail pending treatment for periods longer than the period to which they would likely be sentenced if found guilty of the crime.  But none of these persons has been convicted of the crime for which they are being held.  All are presumed innocent.

4.     The situation faced by these inmates has now reached a state of crisis.  Defendant USH's waitlist has doubled each year for the past three years, with wait times increasing from 30 days to 180 days over the same period.  In 2013, there were 15 individuals with mental illness on the list.  Today, there are at least 56.

5.     As the result of these delays, individuals with mental illness must languish in Utah's county jails without appropriate mental health treatment until a forensic bed becomes available at Defendant USH.  Jails are not intended to be, or operated as, therapeutic facilities; they are, by design, punitive in nature.  Because county jails are not designed or administered to provide for the psychiatric needs of individuals with mental illness, Plaintiffs receive little or no meaningful treatment while they wait for a bed at Defendant USH.  Inmates with severe mental illness present the jail with special discipline and management problems.  To protect these

vulnerable people from bullying and abuse, jail personnel frequently place them in protective custody or solitary confinement, which only serves to aggravate the inmates' mental illness.

6.      These delays violate the inmates' right to due process of the laws under the Fourteenth Amendment and the corresponding provision of the Utah Constitution.  Defendants have the duty to accept and treat mentally incompetent defendants within a reasonable period of time, which must be measured in hours and days, not months.  Defendants' failure to provide timely treatment forces Plaintiffs and the members of the class they represent to wait months in county jails for court-ordered competency services that Defendants are statutorily required to provide.  In this case, plaintiffs seek a declaration of their rights and an order enjoining Defendants from violating their rights.

## JURISDICTION AND VENUE

7.      This action is brought under 42 U.S.C. § 1983 because Defendants, and each of them, have subjected Plaintiffs and the members of the class of persons they represent, to the deprivation of rights secured under the United States Constitution.

8.      This action arises under the Fourteenth Amendment to the United States Constitution as well as under Article I, §7 of the Utah Constitution.  Accordingly, this Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 1343 (civil rights jurisdiction).

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to the dispute occurred in this district.

## PARTIES

10.      Plaintiff DLC is a non-profit corporation, and has been designated by the Governor of the State of Utah as the state's protection and advocacy ("P&A") system.  The DLC

4

is a federally authorized and funded organization established under the Protection and Advocacy

for Mentally Ill Individuals Act of 1986 ("PAIMI"), 42 U.S.C. § 10801, *et seq*.  Under the

leadership of its governing board and advisory councils, the DLC advocates for and protects the

legal rights of people with disabilities, including individuals with mental illness, across the state

of Utah.  The DLC consults with individuals with disabilities and their family members in

identifying organizational priorities.  The DLC accomplishes this by reserving space on its

governing board and advisory councils for such individuals, providing a formal grievance

process, and ensuring opportunities for public comment.

  11. As the designated P&A system for the state of Utah, the DLC is authorized by

Congress to "pursue administrative, legal, and other appropriate remedies to ensure the

protection of individuals with mental illness who are receiving care or treatment in the State."

42 U.S.C. § 10805(a)(1)(B).

  12. The DLC's 16-member elected governing board consists of individuals with

disabilities and their family members.  The board is knowledgeable of the needs of individuals

with mental illness and is advised by the PAIMI Advisory Council.  Specifically, the PAIMI

Advisory Council advises the DLC and its governing board on the priorities and policies that

guide the DLC's work to protect and advocate for the rights of Utahns with mental illness.  The

PAIMI Advisory Council is composed of consumers of mental health services, family members,

providers, attorneys, and other interested and knowledgeable persons from the community.  The

DLC is closely connected to the interests of those it serves.

  13. Plaintiff S.B. is a 27-year old U.S. citizen residing in the State of Utah who has

been charged with shoplifting, a third degree felony.  On March 11, 2015, following three court-

ordered competency evaluations, a Utah district court judge found Plaintiff S.B. to be

incompetent to stand trial.  On the same day, the court ordered Plaintiff S.B. to receive

competency restoration treatment.  In a letter dated March 18, 2015, Defendant USH informed

the court of its waiting list for admissions.  In letters dated June 3, 2015, July 6, 2015, and

August 13, 2015, Defendant USH sought extensions of three separate competency review

hearings due to the hospital's waiting list.  Plaintiff S.B. remains in the custody of the Utah

County Jail.

14.     Plaintiff S.B.'s current mental state limits his ability to protect his legal interests.

A next friend must therefore represent his interests.  S.B. is close to his mother and believes that

she would best be able to protect his interests.  S.B.'s mother, Margaret Goodman, is very

concerned about S.B. and is caring for his cat and dog while he is in jail.  Margaret Goodman has

volunteered to serve as S.B.'s next friend.

15.     Plaintiff A.U. is a 34-year old U.S. citizen residing in the State of Utah who has

been charged with violating his probation.  After pleading guilty to third-degree violation of a

protective order, A.U. was sentenced to probation in 2014.  He was subsequently charged with

several misdemeanors, which resulted in the violation of his probation, and booked into the Utah

County jail on October 10, 2014.  On April 6, 2015, following two court-ordered competency

evaluations and a Progress/Violation Report filed by the Division of Adult Probation and Parole,

a Utah district court judge found Plaintiff A.U. to be incompetent to stand trial.  On the same

day, the court ordered Plaintiff A.U. to receive competency restoration treatment.  In a letter

dated April 9, 2015, Defendant USH informed the court of its waiting list for admissions.  In a

letter dated June 2, 2015, Defendant USH sought an extension of a June 8, 2015 competency

review hearing due to the hospital's waiting list.  Despite the court's June 8, 2015 order that

6

Plaintiff A.U. be released from the Utah County Jail on GPS pending available space at

Defendant USH, Plaintiff A.U. remains in the custody of the Utah County Jail.

16.     Plaintiff A.U.'s current mental state limits his ability to protect his legal interests.

A next friend must therefore represent his interests.  A.U.'s sister, Mary Eka, has volunteered to

serve as his next friend.

17.     Plaintiff S.W. is a 71-year old U.S. citizen residing in the State of Utah who has

been charged with shoplifting.  On May 7, 2015, a Utah district court judge found Plaintiff S.W.

mentally ill and ordered him to receive treatment, care, custody, and security that is adequate and

appropriate to S.W.'s conditions and needs.  In a letter dated May 11, 2015, Defendant USH

informed the court of its waiting list for admissions.  Plaintiff S.W. remains in the custody of the

Salt Lake County Jail.

18.     S.W.'s current mental state limits his ability to protect his legal interests.  A next

friend or guardian ad litem must therefore represent his interests.  S.W. could not identify any

family with whom he maintains a relationship who could fill this role.

19.     The Plaintiffs identified in paragraphs 13 through 18 (hereinafter collectively the

"Class Plaintiffs") bring this action on behalf of themselves and as alleged on behalf of the class

of inmates they represent.  Each Class Plaintiff is a mentally incompetent criminal defendant

who is being detained, or has been detained in a county jail in the state of Utah while awaiting

transfer for competency restoration treatment.

20.     Each of the Class Plaintiffs, and each current and future member of the Class in

this case, has been adjudged to be mentally incompetent to stand trial in a criminal proceeding.

As a result of this incompetency, Plaintiffs' interests may need to be represented through

representatives such as next friends or guardians ad litem.

22422191.8

21.     While two of the three named Class Plaintiffs at this time are represented by individuals who have agreed to serve as next friend, no next friend has been identified for S.W. It may become necessary for the Court to appoint one or more guardians ad litem or "issue another appropriate order" under Fed. R. Civ. P. 17(c)(2) for S.W., or for other Plaintiffs who may join the case, upon motion during this proceeding.

22.     Defendant DHS is the state agency of Utah designated to administer or supervise the administration of competency restoration treatment under Utah Code Ann. § 77-15-6(1).

23.     Defendant Ann Williamson is the Executive Director of DHS and is sued in her official capacity.  As executive director of DHS, Defendant Williamson is ultimately responsible for the administration and supervision of Defendant USH.

24.     Defendant DSAMH is a division within DHS.  DSAMH was created as Utah's substance abuse and mental health authority by Utah Code Ann. § 62A-15-103.  DSAMH is charged with ensuring the availability of a comprehensive continuum of services for people with mental health disorders and substance abuse issues.

25.     Defendant Douglas Thomas is the Director of DSAMH and is sued in his official capacity.  As director, Defendant Thomas is responsible for the administration and supervision of Defendant USH.

26.     Defendant USH is a state psychiatric hospital.  It is charged with the responsibility to serve the needs of Utahns with pending criminal proceedings who are ordered to receive competency restoration services.  Defendant USH is located in Provo, Utah.

27.     Defendant Dallas Earnshaw is the Superintendent of USH and is sued in his official capacity.  As Superintendent, Defendant Earnshaw is responsible for oversight, operation, and management of Defendant USH.  As Superintendent, Defendant Earnshaw also

sees that all legal and moral responsibilities pertaining to Defendant USH, as described in statute, state policy, and/or governmental rules and regulations are appropriately met. Defendant Earnshaw is also responsible for hiring the members of Defendant USH's executive team, including the Director of Forensic Services.

## CLASS ACTION ALLEGATIONS

28.     Plaintiffs bring this action as a class action pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of themselves and all members of the class of persons who are now, or will be in the future, charged with a crime in the State of Utah, and who are ordered to receive competency restoration services through Defendant USH's Forensic Facility (the "Class").

29.     Plaintiffs seek class-wide declaratory and injunctive relief pursuant to Rule 23(b)(2).

30.     In addition to Class members currently held in Utah jails, the Class consists of an unknown number of future defendants who will be ordered to receive competency restoration services in the future. The exact number of inmates currently in the Class is not known to Plaintiffs with certainty. On information and belief, the number of existing Class members fluctuates, but is believed to consist of approximately 40 to 60 individuals at present. The current number of Class members can be determined through appropriate discovery, although the number of potential future Class members is indeterminable.

31.     The individual Plaintiffs' claims are typical of the claims of all members of the Class because the individual Plaintiffs and the other Class members have all been adjudicated, or will be adjudicated to be incompetent and are, or will be, confined in a jail while waiting for treatment at Defendant USH's Forensic Facility. Plaintiffs and all members of the Class have

similarly suffered harm, or will suffer harm in the future, arising from Defendants' actions and inaction.

32.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  These common legal and factual questions include:

a.     Whether Defendants' failure to admit individuals with mental illness to Defendant USH's Forensic Facility for competency restoration services in a reasonably timely manner violates the Fourteenth Amendment of the United States Constitution.

b.     Whether Defendants' failure to admit individuals with mental illness to Defendant USH's Forensic Facility for competency restoration services in a reasonably timely manner violates Article 1, § 7 of the Utah Constitution.

c.     Whether Defendants have failed to provide competency restoration treatment to Plaintiffs and other Class members within a reasonable period of time.

d.     Whether Plaintiffs and other Class Members are entitled to the declaratory and injunctive relief they seek.

e.     Whether Plaintiffs and other Class Members are entitled to an award of reasonable attorney fees and costs of this suit.

33.     Defendants have acted or refused to act on grounds generally applicable to the entire Class.

34.     The claims asserted herein are capable of repetition while evading review.  There is a continuing and substantial public interest in these matters, justifying declaratory and injunctive relief in favor of the Plaintiffs and the Class.

22422191.8

35.     This suit may be maintained as a class action pursuant to Rules 23(a) and (b)(2),

Federal Rules of Civil Procedure, because Plaintiffs and other members of the Class seek

declaratory and injunctive relief, and all of the above factors of numerosity, commonality,

typicality, and adequacy are present.

36.     A class action is the best available method for adjudication of these legal issues

because individual litigation of these claims would be impracticable, and individual litigation

would be unduly burdensome to the courts.  Furthermore, this suit may be maintained as a class

action because questions of law and fact common to the Class predominate over the questions

affecting only individual class members, and individual litigation would increase the likelihood

of inconsistent or contradictory judgments.  A class action presents fewer management

difficulties and provides the benefits of a single adjudication, economy of scale, and

comprehensive supervision by a single court.

## FACTUAL ALLEGATIONS

### A.  The State's Duty to Admit Mentally Incompetent Detainees to Defendant USH for Competency Restoration Services.

37.     Title 77, chapter 15 of the Utah Code governs inquiries into the sanity of criminal

defendants.  These statutes outline the procedures that Utah courts must follow when a criminal

defendant's mental competency is challenged during criminal proceedings.

38.     Under state and federal law, individuals who lack the ability to understand the

nature of criminal court proceedings against them may not be tried.

39.     Section 77-15-2 of the Utah Code provides that an individual is "incompetent to

proceed if he is suffering from a mental disorder . . . resulting either in his inability" to: (1) "have

a rational and factual understanding of the proceedings against him or of the punishment

specified for the offense charged;" or (2) "consult with his counsel and participate in the proceedings against him with a reasonable degree of rational understanding."

40.     Under section 77-15-3(1) of the Utah Code, whenever a person charged with a public offense or serving a sentence of imprisonment is or becomes incompetent to proceed, a petition for inquiry may be filed in the district court of the county where the charge is pending or where the person is confined.

41.     Once the issue of a defendant's competency to proceed to trial has been raised, all criminal proceedings must be stayed.  The court must review the allegations of incompetency and, if the allegations raise a bona fide doubt as to the defendant's competency to stand trial, order an examination of the defendant and a hearing on the defendant's mental condition.  Utah Code Ann. § 77-15-5(1).

42.     The defendant must be examined by at least two mental health experts not involved in the current treatment of the defendant.  *Id.* at § 77-15-5(2)(b).  The experts examining the defendant must "provide an initial report to the court and the prosecuting and defense attorneys within 30 days of the receipt of the court's order."  *Id.* at § 77-15-6.  The report must "inform the court of the examiner's opinion concerning the competency of the defendant to stand trial, or, in the alternative, the examiner may inform the court in writing that additional time is needed to complete the report.  If the examiner informs the court that additional time is needed, the examiner shall have up to an additional 30 days to provide the report to the court and counsel."  *Id.*

43.     Once the report is received by the court, a hearing must be held "in not less than five and not more than 15 days, unless the court enlarges the time for good cause."  *Id.* at § 77-15-5(9)(a).

44.     If, after the hearing, the defendant is found to be incompetent to stand trial, "the court shall order the defendant committed to the custody of the executive director of the Department of Human Services or a designee for the purpose of treatment intended to restore the defendant to competency."  *Id*. at § 77-15-6(1).

45.     According to a 2008 performance audit by the Utah Legislative Auditor General (the "2008 Audit"), Defendant USH is the only facility in the state of Utah that performs such competency restoration treatment.  When individuals are found not competent to stand trial, they must be sent to Defendant USH's Forensic Facility where treatment teams will attempt to restore the individual's competency.

46.     Section 77-15-6(2) of the Utah Code provides that "[t]he examiner or examiners designated by the executive director [of Defendant DHS] to assess the defendant's progress toward competency may not be involved in the routine treatment of the defendant.  The examiner or examiners shall provide a full report to the court and prosecuting and defense attorneys within 90 days of arrival of the defendant at the treating facility.  If any examiner is unable to complete the assessment within 90 days, that examiner shall provide to the court and counsel a summary progress report which informs the court that additional time is necessary to complete the assessment, in which case the examiner shall have up to an additional 90 days to provide the full report."

47.     Once the court receives the full report, a hearing is held to determine the defendant's current status.  If the court finds that the defendant has been restored to competency, the defendant will be directed to stand trial.  *Id*. at § 77-15-6(5)(a).

48.     As the only facility in the state established to provide competency restoration treatment, Defendant USH—operated by Defendant SAMH, which is in turn a division of

13

Defendant DHS—has the statutory duty to accept and provide restorative treatment to mentally incompetent defendants once they have been certified as such by the court.

49.     In Utah, incompetent defendants must generally wait months after the court orders restorative treatment until they are transferred to Defendant USH's Forensic Facility for treatment.  None of these defendants has been found guilty, and yet the State warehouses them in county jails until Defendant USH has an open spot in its forensic unit.  The warehousing of people with mental illness in county jails when they have not been convicted of any crime, and are legally unable to stand trial, violates the presumption of innocence and the due process right of Class Members to be free of confinement until convicted of a crime.

> **B.     The Inability of County Jails in Utah to Provide Competency Restoration Services to Individuals Deemed Incompetent to Stand Trial.**

50.     According to the 2008 Audit, when Defendant USH's Forensic Facility is full, "individuals are held in the jail awaiting an opening; there are no other adult forensic facilities in the state."

51.     Statistically, a significant portion of Utah's jail population consists of people who suffer from mental illness.  A 2006 study by the Bureau of Justice Statistics found that 64% of jail inmates nationally have some kind of mental illness.  According to a national study published in the 2009 issue of *Psychiatric Services*, 16.9% of inmates have a serious mental illness.  The 2009 report also concluded that the growth of local correctional populations has strained the limited capacity of jails to respond to the needs of inmates.  According to the 2009 report, "[t]he situation is particularly challenging in the case of inmates with serious mental illnesses, who require specialized treatment and services."

14

52.     According to the Treatment Advocacy Center, ten times more people with schizophrenia, bipolar disorder, and other acute forms of brain disease reside in prisons and county jails than in state mental hospitals.  If those results are extrapolated to the Utah population, the Salt Lake County Metro Jail, with over 2,000 inmates, likely holds more individuals with serious mental illness than Defendant USH does.

53.     Jail staff receives insufficient training on effective ways to interact with inmates who have mental health issues, and such inmates present special difficulties for jail staff. Mentally incompetent defendants often suffer from schizophrenia or bipolar disease and sometimes require special housing.  Their mental illness often results in unpredictable and disruptive behavior.  To minimize disruption and maintain order within the jail, it is not uncommon for these individuals to be placed in solitary confinement.  Although the segregation of these individuals from the general jail population is often intended to protect their safety, such confinement makes their mental health condition worse and their prognosis more doubtful.

54.     According to many of Utah's jail commanders and correctional mental health staff, mental health treatment in Utah's county jails is completely inadequate, particularly for individuals with acute mental illness who are most likely to require competency restoration treatment.

55.     As noted above, jails are designed to be punitive, not therapeutic.  There is broad consensus among mental health and correctional professionals throughout the nation that county jails are not appropriate settings in which to attempt to provide treatment designed to restore a person to competency.  Utah's county jails are no exception.

56.     Unlike county jails in Utah, Defendant USH provides patients with intensive individualized care and treatment.  According to Defendant USH's website, "[d]etermination of

15

the most therapeutic approaches for each patient is done by a constant effort to better understand the patient, the illness, and effective treatment options."  "Caring for the welfare of the patient" is Defendant USH's "first priority."

57.     Treatment at Defendant USH's Forensic Facility "includes a combination of medication; individual, group, and family therapy; work opportunities; physical therapy; and occupational therapy."

58.     Peer interaction is an important part of the treatment at Defendant USH's Forensic Facility.  It encourages patients to become involved with those around them and provides them a real opportunity to positively influence others.  According to Defendant USH, patient input is encouraged at all levels of treatment, which teaches individual responsibility and accountability.  It is the goal of Defendant USH's Forensic Facility to help prepare each patient to reenter society as a productive, contributing member.

59.     In contrast, Utah's county jails are unable to treat mentally ill inmates in this manner.  With almost no treatment options available to them, mentally ill inmates are confined under conditions that are nearly certain to exacerbate their mental illness.

**C.     Defendants' Increasing Failure to Provide Competency Restoration Treatment to Mentally Incompetent Pre-Trial Detainees in a Timely Manner.**

60.     The increasing demand for forensic services has required many states, including Utah, to maintain waitlists for admission.  In a 2014 survey conducted by the National Association of State Mental Health Program Directors, 78% of the states surveyed maintain such a waitlist.  In most states, wait times are less than 30 days.  In several states, incompetent defendants must be transferred to the state hospital within seven days of the court's commitment

22422191.8

order.  Under Minnesota's "48-hour rule," inmates must be transferred to a state psychiatric

facility within 48 hours of being committed by a state judge.

61.     The policies driving these practices in other states are obvious.  First, as noted

above, conditions of confinement in county jails aggravate the inmate's mental disorder.

Second, inmates who are entitled to restoration therapy under state law are, by definition,

innocent until proven guilty and cannot constitutionally be confined in jail for protracted periods

without trial.

62.     According to documents provided by Defendant USH, there were more than 50

individuals on the waiting list to be transferred to Defendant USH's Forensic Facility for

competency restoration treatment as of July 27, 2015.  At least five of those individuals had been

waiting for admission to Defendant USH for more than six months, measured from the date of

the court's order requiring treatment at USH.  Seven had been waiting for more than five months

from the treatment order.  Twelve had been waiting more than three months.  Individuals are

typically admitted to Defendant USH in the order they are placed on the waiting list.

Consequently, many of these individuals will likely wait many more months until they are

actually admitted to Defendant USH for competency restoration treatment.

63.     Utah has experienced a 500% growth in demand for USH's forensic services

since 1985.  Although delays are worse now than ever before, long delays for competency

restoration treatment at Defendant USH are not new.  The 2008 Audit found that the hospital's

Forensic Facility had an average of 10 patients on the waiting list per month as early as January

2006.  According to documents provided by Defendant USH, forensic bed capacity at the state

hospital has grown from 30 beds in 1985 with no waiting list to 100 beds in 2014, with

approximately 50 individuals on the waiting list.

17

64.     Defendant USH's forensic waitlist has doubled each year for the past three years, with wait times for admission increasing from 30 days to 180 days over the same time period.  In fiscal year 2013, there were fifteen individuals on the waitlist; in fiscal year 2014, there were twenty-six individuals on the waitlist; and in fiscal year 2015 there were a reported fifty-six individuals on the waitlist.

65.     Defendants are well aware of the growing waitlist and the fact that there is a higher demand for forensic services than Defendant USH can meet.

66.     To address the growing demand for competency restoration services, Defendant USH proposed four options to the Legislature in 2014: (1) provide pre-admission jail-based competency restoration services (estimated cost of $300,000); (2) privately contract to provide jail-based competency programming (estimated cost of $2 million); (3) staff a step-down unit at USH for forensic overflow (estimated cost of $4 million); or (4) build additional beds at USH (estimated cost of $20 million) and provide additional staff (estimated cost of $4 million per unit of 26 beds).

67.     Defendants opted for the cheapest option.  On July 1, 2015, Defendants began a pilot program in which staff from Defendant USH visit mentally incompetent inmates in county jails in an effort to begin competency restoration.

68.     Upon information and belief, mentally incompetent defendants waiting in county jails are not actually receiving competency restoration treatment as part of Defendant USH's pilot program.  Instead, Defendant or USH staff member periodically meets with mentally incompetent individuals at the jail for approximately 30 minutes to discuss a booklet of material on the subject of competency.  The frequency of these visits depends on the location of the jail.

Inmates in some of Utah's rural county jails report monthly visits while inmates in jails located along Utah's Wasatch Front report weekly visits.

69.     No one acquainted with the State's pilot program believes that it adequately addresses the problem that is the subject of this case.  Besides being completely inadequate, Defendant USH's "jail-based competency restoration" pilot program is not authorized by statute. If the USH staff member believes the inmate is making progress toward competency while in jail, a neutral evaluator is asked to re-assess the individual's competency.  Rather than providing inmates with restoration treatment, therefore, the pilot program instead attempts to re-open the court's original competency determination without court approval, and often without the knowledge of the inmate's criminal defense attorney.  This is in direct conflict with Utah Code Ann. § 77-15-6 which provides that "[a]t any time that the defendant becomes competent to stand trial, the clinical director of the hospital or other facility or the executive director of the Department of Human Services shall certify that fact to the court."

70.     Defendant USH's "jail-based competency restoration" pilot program is by no means a substitute for the type of treatment that Defendant USH's Forensic Facility offers.  Even so, inmates who are currently meeting with Defendant USH staff in county jails as part of the pilot program are still waiting months for admission to Defendant USH or for a court to find them competent to stand trial.  Defendant Earnshaw has publicly acknowledged that this is not a long-term solution.

### D.  Defendants' Failure to Provide Competency Restoration Services to the Class Plaintiffs in a Timely Manner.

#### a.  Plaintiff S.B.

71.     Plaintiff S.B. is a defendant in a criminal case in Utah County, Utah.  He was charged with shoplifting and booked into the Utah County jail on November 25, 2014.

72.     Plaintiff S.B. suffers from paranoid schizophrenia which is often characterized by delusions and auditory hallucinations.

73.     On December 17, 2014, Plaintiff S.B.'s criminal defense attorney petitioned the court for Plaintiff S.B. to be examined by two evaluators in order to determine his competency to proceed.

74.     Following three separate evaluations into Plaintiff S.B.'s competency, a court determined that Plaintiff S.B. suffers from a substantial mental illness and deemed him incompetent to stand trial.

75.     On March 11, 2015, more than three months after he was first jailed, the court ordered Plaintiff S.B. committed to the custody of the executive director of Defendant DHS or a designee for the purpose of treatment intended to restore Plaintiff S.B.'s competency to stand trial.  In its March 11, 2015 order, the court also scheduled a competency review hearing for Plaintiff S.B. on June 9, 2015.

76.     On March 18, 2015, Defendant USH filed a letter with the court informing the court that it received the commitment order for Plaintiff S.B and that there is a waiting list for admissions to the hospital's Forensic Facility.

77.     Plaintiff S.B. was scheduled to attend a competency review hearing on June 9, 2015, but that hearing was postponed after Defendant USH sought an extension due to the fact that Plaintiff S.B. was still on Defendant USH's waiting list almost three months after the commitment order.

78.     The court rescheduled Plaintiff S.B.'s competency review hearing for July 14, 2015.  But on July 6, 2015, Defendant USH sought yet another extension due to the fact that

Plaintiff S.B. was still on the hospital's waiting list almost four months after the commitment order.

79.     Despite the court's March 11, 2015 order and Defendant USH's repeated extensions, Plaintiff S.B. has still not been admitted to USH.  Instead, Plaintiff S.B. is being held at the Utah County Jail, where he is not receiving adequate mental health services.

80.     Based on the allegations of paragraphs 71 through 78, Defendants knew and/or should have known that Plaintiff S.B. was found mentally incompetent to stand trial, was committed to their custody on March 11, 2015, and has been waiting in jail for competency restoration treatment for almost six months.

81.     Upon information and belief, S.B. previously suffered physical abuse by members of his own family.  According to his mother, S.B.'s behavior began to markedly change two years ago.  Specifically, S.B.'s mother noticed that S.B. began talking to himself and hearing voices.  Due to his mental health condition, S.B.'s mother often feels helpless and unsure of how to respond to her son's behavior.  According to his mother, S.B. often feels claustrophobic which can sometimes lead to constant pacing and anxiety.  S.B.'s mother believes that the voices her son hears exacerbate these feelings and emotions.

82.     Upon information and belief, Plaintiff S.B. is "decompensating" in the Utah County Jail while he waits for a bed in the Forensic Facility at Defendant USH.  In other words, his confinement in jail has contributed to his deterioration of his normal psychological defenses, with the result that he experiences depression, anxiety, and delusions.  Plaintiff S.B. hears voices, talks to himself, and has been placed on suicide watch at the Utah County Jail.

22422191.8

b.   **Plaintiff A.U.**

83.     Plaintiff A.U. is a defendant in a criminal case in Utah County, Utah.  After pleading guilty to third-degree violation of a protective order, A.U. was sentenced to probation. He was subsequently charged with several misdemeanors, which resulted in the violation of his probation, and booked into the Utah County jail on October 10, 2014.

84.     Plaintiff A.U. suffers from schizophrenia and "Personality Disorder, non-specified."  He has a history of psychotic disorder, paranoid delusions, psychiatric hospitalization, and treatment with psychoactive medications.

85.     Pursuant to Utah Code Ann. § 77-15-1, *et seq*., Plaintiff A.U. was examined by two evaluators for purposes of competency.  The evaluations conflicted, with one evaluator finding A.U. competent to proceed and the other finding A.U. incompetent to proceed.  Also considered by the court was a Progress/Violation Report was filed by the Division of Adult Probation and Parole on October 16, 2014.  In that report, the Division recounts Plaintiff A.U.'s charges and mental health conditions.  The report states that Plaintiff A.U. could benefit from "something more restrictive such as placement at the Utah State Hospital."  The report further provides that A.U. is "struggling with some type of mental illness that needs to be addressed before something tragic happens."  The parties ultimately stipulated to the findings of Dr. Williams-the evaluator who found Plaintiff A.U. incompetent to stand trial.

86.     On April 6, 2015, almost six months after he was first jailed, the court ordered Plaintiff A.U. committed to the custody of the executive director of Defendant DHS or a designee for the purpose of treatment intended to restore Plaintiff A.U.'s competency to stand trial.  In its April 6, 2015 order, the court also scheduled a competency review hearing for Plaintiff A.U. on June 8, 2015.

22422191.8

87.     On April 9, 2015, Defendant USH filed a letter with the court informing the court that it received the commitment order for Plaintiff A.U. and that there is a waiting list for admissions to the hospital's Forensic Facility.

88.     Plaintiff A.U. was scheduled to attend a competency review hearing on June 8, 2015 but that hearing was postponed after Defendant USH sought an extension due to the fact that Plaintiff A.U. was still on Defendant USH's waiting list almost two months after the commitment order.

89.     The court rescheduled Plaintiff A.U.'s competency review hearing for August 31, 2015.  But on August 24, 2015, Defendant USH sought yet another extension due to the fact that Plaintiff A.U. was still on the hospital's waiting list almost four months after the commitment order.

90.     On June 8, 2015, the Court ordered that Plaintiff A.U. be released on GPS pending available bed space at the Utah State Hospital.

91.     Despite the court's April 6, 2015 order, Defendant USH's repeated extensions, the findings from the October 14, 2014 Progress/Violation Report, and the June 8, 2015 Order of Release, Plaintiff A.U. has still not been admitted to Defendant USH.  Instead, Plaintiff A.U. is being held at the Utah County Jail, where he is not receiving adequate mental health services.

92.     Based on the allegations of paragraphs 83 through 90, Defendants knew and/or should have known that Plaintiff A.U. was found mentally incompetent to stand trial, was committed to their custody on April 6, 2015, and has been waiting in jail for competency restoration treatment for more than five months.

93.     Plaintiff A.U. has been housed at the Utah County Jail since October 10, 2014. Since that time, Plaintiff A.U. has been housed in solitary confinement where he sits alone in his

23

cell for twenty-three to twenty-four hours per day.  He does not receive any outdoor exercise time or dayroom privileges, but he can see other inmates enjoying such privileges from his cell.

94.     According to Plaintiff A.U., he was diagnosed with schizophrenia three years ago but he is not receiving any medication from jail staff.  Plaintiff A.U. hears voices and suffers from hallucinations.  The voices Plaintiff A.U. hears are disturbing.  Among other things, these voices tell Plaintiff A.U. to kill himself, that nobody likes him, and that none of his family members care about him.  According to Plaintiff A.U., he feels as if he is living in hell and could possibly die in jail.  The voices Plaintiff A.U. hears intensify these feelings and emotions.

95.     Upon information and belief, Plaintiff A.U. is "decompensating" in the Utah County Jail while he waits for a bed in the Forensic Facility at Defendant USH.

c.   **Plaintiff S.W.**

96.     Plaintiff S.W. is a defendant in a criminal case in Salt Lake County, Utah.  He was charged with shoplifting and booked into the Salt Lake County Metro Jail on March 21, 2014.

97.     Plaintiff S.W. is 71-years old and has a mobility disability.  Due to his physical disability, S.W. relies on the use of a wheelchair and is housed in a cell that ostensibly meets the accessibility requirements under the Americans with Disabilities Act.

98.     On May 7, 2015, more than 13 months after he was initially jailed, the court found by clear and convincing evidence that Plaintiff S.W. is incompetent to stand trial and ordered him to be committed to Defendant DHS for treatment, care, custody, and security that is adequate and appropriate to S.W.'s conditions and needs.  The court further ordered Defendant DHS to provide a report on S.W.'s mental status within 90 days of the court's May 7, 2015 order.

22422191.8

99.     On May 11, 2015, Defendant USH filed a letter informing the court that it received the commitment order for Plaintiff S.W. and that there is a waiting list for admissions to the hospital's Forensic Facility.

100.     More than four months following the court's commitment order, Plaintiff S.W. has still not been admitted to Defendant USH.  Instead, Plaintiff S.W. is being held at the Salt Lake County Metro Jail, where he is not receiving adequate mental health services.

101.     Based on the allegations of paragraphs 96 through 99, Defendants knew and/or should have known that Plaintiff S.W. was found mentally incompetent to stand trial, was committed to their custody on May 7, 2015, and has been waiting in jail for competency restoration treatment for more than four months.

102.      S.W. has been deeply affected by this experience.  According to S.W., he has suffered physical abuse by jail staff on three occasions.  S.W. is currently housed in protective custody at the Salt Lake County Metro Jail in an effort to protect him from harm by other inmates, staff, and outside sources.

103.     In speaking with Plaintiff S.W., he feels "short-circuited," as if he is living in a vacuum.  S.W. claims to have five children and twenty-four grandchildren yet none of them knows that he is currently incarcerated because he does not want to weigh them down with problems of his own.  S.W. is extremely frustrated not to have any answers as to when he will be transferred to Defendant USH and to have no explanation for the delay.

104.     Upon information and belief, Plaintiff S.W. is "decompensating" in the Salt Lake County Metro Jail while he waits for a bed in the Forensic Facility at Defendant USH.

   **E.  Defendants' Past Failures to Provide Competency Restoration Treatment to
        Similarly-Situated Individuals With Mental Illness Demonstrates a Systemic
        Failure Likely to Evade Judicial Review in the Absence of a Class Action.**

105.    While the experiences of the named Class Plaintiffs above are disturbing and
unjust, they are not unique for criminal defendants who are adjudged incompetent to stand trial
in the State of Utah.  In investigating the facts giving rise to this Complaint, the DLC has
encountered a steady stream of individuals who have similarly suffered in jail for absurd periods
of time while awaiting restorative treatment.

106.    This case is uniquely suited for certification as a class action because of the
clearly-established pattern of conduct that is likely to evade judicial review for any individual
plaintiff.

107.    While these individuals are held in custody without treatment for
unconstitutionally excessive periods of time, they are (eventually) admitted into the Forensic
Facility at USH.  However, as each potential Class member transitions into the USH facility,
dozens more remain on the waitlist for indeterminate periods of time, while new names are
added to the bottom of the waitlist regularly.

108.    For example, an individual known as J.B. was detained in the Weber County jail
for nearly 11 months before admission to the USH Forensic Facility.

109.    J.B. was charged with a third-degree felony and booked into the Weber County
jail on September 23, 2014.  J.B. suffers from a mental health condition as well as intellectual
disabilities.  J.B. is illiterate, has been the subject of physical abuse by members of his family,
and has been homeless for the majority of his adult life.  J.B.'s mental health condition and
intellectual disabilities make the Weber County Jail an especially deleterious place for him to
remain confined.

110.    Following three separate competency evaluations, the court determined that J.B. was mentally incompetent to stand trial.  On February 12, 2015, (about five months after J.B. was put in jail), the court ordered J.B. committed to the custody of the executive director of Defendant DHS or a designee for the purpose of treatment intended to restore J.B. to competency.

111.    On February 26, 2015, Defendant USH filed a letter informing the court that it received the commitment order for J.B. but that there is a waiting list for admissions to the hospital's Forensic Facility.

112.    J.B. was scheduled to attend a competency review hearing on June 1, 2015, but that hearing was postponed after Defendant USH sought an extension due to the fact that J.B. was still on the hospital's waiting list more than three months after the commitment order.  In a May 19, 2015 letter, Defendant USH anticipated that J.B. would be admitted to the state hospital in "the next several months."

113.    Following Defendant USH's request for an extension, J.B.'s original competency hearing was rescheduled for August 3, 2015.  But on July 22, 2015, Defendant USH sought yet another extension of the August 3, 2015 review hearing due to the fact that J.B. was still on the hospital's waiting list—five months after the court's commitment order.  In the July 22, 2015 letter, Defendant USH anticipated that J.B. would be admitted to the state hospital in "the next month."

114.    J.B. and an individual willing to serve has his next friend were planning to serve as named Class Plaintiffs in this action prior to J.B.'s long-awaited admission to the state hospital, demonstrating the systemic risk that this issue will continue to evade judicial review.

22422191.8

115.    The DLC has also encountered other individual criminal defendants in recent months who have waited at least five or six months following commitment orders (and nearly a year of jail time, dating back to their initial booking) without receiving mental health services or restorative care.  This problem is recurring and growing more severe with each passing day.

## FIRST CAUSE OF ACTION
## (VIOLATION OF DUE PROCESS)

116.    The allegations contained in paragraphs 1 through 115 above are incorporated herein.

117.    The Fourteenth Amendment prohibits the states from depriving any person of life, liberty, or property without due process of law.

118.    Incapacitated criminal defendants have liberty interests in freedom from incarceration and in receiving restorative treatment.

119.    Due process requires that the nature and duration of confinement must bear a reasonable relation to the purpose for which an individual is committed.

120.    Once an individual is found unable to aid and assist in his or her own defense, the only lawful purpose for further confinement is to assure treatment so as to return him or her to competency.

121.    Individuals found unable to aid and assist have a constitutional right to such individualized treatment as will give each of them a realistic opportunity to be cured or to improve their mental condition.

122.    City and county jails do not have the capacity, the resources, or the expertise to provide the restorative mental health treatment required by the United States Constitution.

123.    No legitimate state interest justifies the confinement of mentally incompetent criminal defendants in county jails for months on end.  The nature and duration of their

28

incarceration bear no reasonable relation to the restorative purpose for which the court has committed those individuals to treatment.

124.    The Class Plaintiffs and the other members of the Class are entitled to an order of the Court declaring that, by requiring mentally incompetent defendants to remain in city and county jails for protracted periods, and by failing to provide restorative treatment in a reasonably timely manner, Defendants have violated the Fourteenth Amendment Due Process rights of the Class Plaintiffs and the other Class members.

125.    Unless enjoined by the Court, Defendants will continue to violate the constitutional rights of the Class Plaintiffs and the other Class members.  The Class Plaintiffs and the other members of the Class are therefore entitled to an order of the Court enjoining Defendants, and each of them, from all further violations of the Class's rights of due process in relation to their continued confinement while awaiting treatment at USH.

**SECOND CAUSE OF ACTION**
**(VIOLATION OF UTAH CONSTITUTION, ARTICLE I, § 7)**

126.    The allegations contained in paragraphs 1 through 125 above are incorporated herein.

127.    Article 1, Section 7 of the Utah Constitution provides that no person shall be deprived of life, liberty, or property without due process of law.

128.    The Class Plaintiffs and the other members of the Class are entitled to an order of the Court declaring that Defendants' delays in admitting mentally incompetent defendants to Defendant USH's Forensic Facility violate their rights under Article I, section 7, and that in failing to timely to treat mentally incompetent defendants from city and county jails, Defendants have violated the rights of mentally incompetent defendants to competency restorative treatment within a reasonable period of time.

29

22422191.8

129.    Unless enjoined by the Court, Defendants will continue to violate the state constitutional rights of the Class Plaintiffs and other Class members.  The Class Plaintiffs and the other members of the Class are therefore entitled to an order of the Court enjoining Defendants, and each of them, from all further violation of the Class's rights under Article I, section 7 in relation to their continued confinement while awaiting treatment at USH.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand relief as follows:

A.    Plaintiffs demand an order certifying the Class, as defined above;

B.    Plaintiffs demand an order of the Court declaring that, by requiring mentally incompetent defendants to remain in city and county jails for protracted periods, and by failing to provide restorative treatment in a reasonably timely manner, Defendants are depriving Class Members of their due process rights under the Fourteenth Amendment to the United States Constitution and Article 1, § 7 of the Utah Constitution;

C.    Plaintiffs demand for the issuance of temporary, preliminary, and permanent injunctive relief restraining Defendants from violating the Fourteenth Amendment to the United States Constitution and Article 1, § 7 of the Utah Constitution in relation to the confinement of individuals awaiting competency restoration;

D.    Plaintiffs demand that this Court award reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988; and

E.    Plaintiffs demand for such other relief as the Court may deem just and proper.

22422191.8

DATED this 8th day of September, 2015.

DISABILITY LAW CENTER


/s/ Aaron M. Kinikini

Aaron M. Kinikini
Erin B. Sullivan

*Attorneys for Plaintiffs*


SNELL & WILMER L.L.P.


/s/ Alan L. Sullivan

Alan L. Sullivan
Jared C. Fields
Bret Evans
*Attorneys for Plaintiffs*

22422191.8