IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| DISABILITY LAW CENTER, a Utah nonprofit corporation; S.B., an individual, by and through his next friend Margaret Goodman; A.U., by and through his next friend Mary Eka; and S.W., an individual,<br><br>      Plaintiffs,<br><br>v.<br><br>STATE OF UTAH; UTAH DEPARTMENT OF HUMAN SERVICES; ANN WILLIAMSON, in her official capacity as Executive Director of the Utah Department of Human Services; UTAH DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH; DOUGLAS THOMAS, in his official capacity as Director of the Utah Division of Substance Abuse and Mental Health; UTAH STATE HOSPITAL; DALLAS EARNSHAW, in his official capacity as Superintendent of Utah State Hospital,<br><br>      Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:15-cv-00645-RJS<br><br>Judge Robert J. Shelby |

   This case is about the substantive due process rights of pretrial detainees who have been declared incompetent to stand trial. The State of Utah holds these pretrial detainees—who have been declared incompetent but have not been adjudicated guilty of a crime—in jail for extended periods while they wait to receive court-ordered competency restoration treatment. The question presented is whether the State is depriving these incompetent criminal defendants of their substantive due process rights under the United States Constitution and the Utah Constitution.

Plaintiffs bring this putative class action under 42 U.S.C. § 1983, seeking declaratory and injunctive relief against the State and related parties. The State now moves to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted. For the reasons stated below, the court denies the State's motion.

## BACKGROUND

Before addressing the legal issues presented by the State's motion, the court first introduces the parties to this lawsuit, outlines the State's statutory procedure for identifying incompetent criminal defendants, and discusses the problem giving rise to this action.[1]

### I. The Parties

Plaintiff Disability Law Center (DLC) and Individual Plaintiffs S.B., A.U, and S.W. bring this putative class action on behalf of themselves and the class of incompetent defendants they seek to represent. Each member of the putative class has been declared mentally incompetent to stand trial and is being, or has been, detained in a county jail in State custody while awaiting transfer to Defendant Utah State Hospital (USH) for competency restoration treatment. USH is a state psychiatric hospital and the only facility in Utah that provides competency restoration treatment to criminal defendants who have been declared incompetent to stand trial.

DLC is a federally authorized and funded nonprofit corporation established under the Protection and Advocacy for Mentally Ill Individuals Act of 1986.[2] Utah's Governor has designated DLC as the State's protection and advocacy system. In that capacity, DLC advocates for and seeks to protect the rights of people with disabilities, including individuals with mental illness.

---

[1] Because this matter is before the court on a motion to dismiss, the court accepts the well-pleaded factual allegations in the Complaint as true and views them in the light most favorable to the nonmoving party. *See Carroll v. Lawton Indep. Sch. Dist. No. 8*, 805 F.3d 1222, 1226 (10th Cir. 2015).

[2] 42 U.S.C. §§ 10801–10805.

2

S.B. is a criminal defendant charged with shoplifting. He is being held in State custody pending trial. A Utah trial court declared S.B. mentally incompetent to stand trial on March 11, 2015, and ordered that he be transferred to USH for competency restoration treatment. But because USH lacked space, it placed S.B. on its waiting list for admissions. S.B. was still incarcerated at the Utah County Jail when this case was filed on September 8, 2015.

A.U. is charged with violating the terms of his probation. On April 6, 2015, a Utah trial court declared A.U. mentally incompetent to stand trial and ordered that he be transferred to USH for competency restoration treatment. Yet, as it did with S.B., USH placed A.U. on its waiting list. A.U. remained in the custody of the Utah County Jail as of the filing of this case, even though the trial court ordered on June 8, 2015, that A.U. be released until space is available at USH.

S.W. is charged with shoplifting. A Utah trial court found S.W. mentally incompetent on May 7, 2015, and ordered that he be provided treatment, care, custody, and security that is adequate and appropriate for his needs and conditions. USH placed S.W. on its waiting list. S.W. was still held in the Salt Lake County Jail when this case was filed.

Defendants include the State, the Utah Department of Human Services (DHS), the Utah Division of Substance Abuse and Mental Health (DSAMH), and USH.[3] DHS is charged by statute with providing competency restoration services to incompetent criminal defendants. DSAMH, which is a division of DHS, operates USH. Defendants also include three State officials who are sued in their official capacities: Ann Williamson, the Executive Director of DHS; Douglas Thomas, the Director of DSAMH; and Dallas Earnshaw, the Superintendent of USH.

---

[3] The court refers to the Defendants collectively as the State.

## II.   The State's Statutory Scheme for Competency Restoration

The State has established a statutory procedure for identifying incompetent persons charged with a crime and for providing those persons with competency restoration treatment so their guilt or innocence can be determined at trial.

Utah law provides that a criminal defendant declared incompetent to stand trial shall not be tried for a criminal offense.[4] When a criminal defendant's competency to stand trial is raised, the trial court must stay all proceedings and review the allegations of incompetency.[5] If the court determines that the allegations "raise a bona fide doubt as to the defendant's competency to stand trial," the court "shall order an examination of the defendant and a hearing on the defendant's mental condition."[6] At least two mental health experts must examine the defendant and provide to the court and counsel within thirty days of the court's order a report on the defendant's competency.[7] The court usually must hold a competency hearing between five and fifteen days after receiving the report.[8]

If the court concludes after the hearing that the defendant is incompetent to stand trial, then "the court shall order the defendant committed to the custody of the executive director of the Department of Human Services or a designee for the purpose of treatment intended to restore the defendant to competency."[9] DHS, in turn, must transfer the defendant to USH, as it is the only Utah facility designated for providing competency restoration treatment to incompetent

---

[4] Utah Code § 77-15-1; *see also United States v. DeShazer*, 554 F.3d 1281, 1285 (10th Cir. 2009) ("The Constitution forbids the trial of a defendant who lacks mental competency." (citation omitted)). A criminal defendant is incompetent under Utah law if he is unable to have a rational understanding of the proceedings against him or is unable to assist defense counsel and participate in his defense. Utah Code § 77-15-2; *see also DeShazer*, 554 F.3d at 1286 ("The test for competency to stand trial asks whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." (citation omitted) (internal quotation marks omitted)).
[5] Utah Code § 77-15-5(1)(a)–(b).
[6] *Id.* § 77-15-5(1)(b)(v).
[7] *Id.* § 77-15-5(2), (6).
[8] *Id.* § 77-15-5(9)(a).
[9] *Id.* § 77-15-6(1).

criminal defendants. Treatment teams at USH provide intensive individualized care and treatment in an attempt to restore the defendant's competency.

Once the defendant arrives at USH, an examiner must provide to the court and counsel within ninety days a report on the defendant's progress.[10] The examiner may receive an additional ninety days to provide the report if he provides a progress report informing the court that more time is necessary to complete the assessment.[11]

After receiving the USH progress report and assessment, the court must hold a hearing to determine the defendant's current status. After the hearing, the court may do one of three things. First, if the court determines that the defendant has regained competency, the court must direct the defendant to stand trial.[12] Second, if the court finds the defendant remains incompetent to stand trial with a substantial probability of regaining competency in the foreseeable future, then "the court may order that the defendant remain committed to the custody of the executive director of the Department of Human Services or a designee for the purpose of treatment intended to restore the defendant to competency."[13] Third, if the court concludes the defendant is incompetent to stand trial without a substantial probability of regaining competency in the foreseeable future, then the court must order the defendant released from the custody of DHS unless the prosecutor informs the court that civil commitment proceedings will be initiated.[14] But "[i]n no event may the maximum period of detention . . . exceed the maximum period of incarceration which the defendant could receive if the defendant were convicted of the charged offense."[15]

---

[10] *Id.* § 77-15-6(2).
[11] *Id.*
[12] *Id.* § 77-15-6(4)–(5).
[13] *Id.*
[14] *Id.*
[15] *Id.* § 77-15-6(13).

### III. The Problem

The State's statutory scheme is not working. And USH's Forensic Facility is full. This means USH must place incompetent criminal defendants on a waiting list until a bed at USH becomes available. As a result, Plaintiffs allege that many incompetent defendants must wait in jail for months after a court declares them incompetent before they are transferred to USH for treatment. It is not uncommon for these individuals to remain incarcerated in county jails for six months or more after a court orders them transferred to USH for treatment. And in some cases, incompetent defendants are held in jail awaiting transfer to USH for periods longer than the length of the sentence they would serve if found guilty of the crime with which they are charged.

Plaintiffs also allege that USH's waitlist has doubled each of the past three years, even as USH has increased capacity from thirty beds in 1985 to one hundred beds in 2014. Wait times have grown from 30 days to 180 days over that period, and the number of defendants on the wait list has increased from fifteen individuals in 2013 to over fifty individuals as of late July 2015. At least five of those fifty individuals waited in jail for over six months after a court ordered them transferred for treatment. Seven individuals waited over five months, and twelve waited over three months.

Worse still, Plaintiffs assert that the mental health condition of many incompetent defendants deteriorates while they languish in jail without receiving adequate mental health treatment. According to Plaintiffs, this is because Utah's jails are ill equipped to handle inmates with serious mental health issues. And to minimize disruption and maintain order, county jails frequently place incompetent defendants in protective custody or solitary confinement. Although confinement is often intended to protect incompetent defendants, it frequently only aggravates mental illness, causing significant distress and making it less likely the defendants' competency

will be restored.

For example, Plaintiffs claim that S.B.'s mental condition has deteriorated while waiting in jail to the point where he hears voices and talks to himself. Jail staff has now placed S.B. on suicide watch. Plaintiffs similarly assert that A.U. has been placed in solitary confinement where he sits in his cell for twenty-three to twenty-four hours per day. A.U.'s condition has declined so much that he hears voices that tell him to kill himself, that nobody likes him, and that none of his family members care about him. Plaintiffs also allege that S.W. was placed in protective custody after jail staff physically abused him on three occasions.

The State began a pilot program in early July 2015 in an attempt to address this growing problem. Under the program, a USH staff member visits incompetent defendants in jail. But according to Plaintiffs, incompetent defendants do not receive competency restoration treatment as part of the program. Instead, Plaintiffs allege, a USH staff member periodically meets with incompetent defendants in jail for thirty minutes to discuss a booklet on competency. Plaintiffs assert that a USH staff member visits jails along Utah's Wasatch Front on a weekly basis, while a staff member visits some of Utah's rural county jails on a monthly basis.

Believing the situation faced by incompetent criminal defendants has reached a state of crisis, Plaintiffs sued the State under 42 U.S.C. § 1983 requesting declarative and injunctive relief. Plaintiffs claim that the State is depriving incompetent defendants of their substantive due process rights under the Fourteenth Amendment to the United States Constitution and article I, section 7 of the Utah Constitution by holding these defendants—who have not been adjudicated guilty of a crime—in jail for unreasonable periods while they wait to receive court-ordered competency restoration treatment.

ANALYSIS

The State now moves to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6).[16] The court's analysis proceeds in three parts. The court first provides the legal standard applicable to the State's motion to dismiss. The court then examines whether Plaintiffs have stated a plausible claim for relief under the substantive due process component of the Fourteenth Amendment to the United States Constitution. And third, the court examines whether Plaintiffs have stated a plausible claim for relief under article I, section 7 of the Utah Constitution. In the end, the court concludes that Plaintiffs have pled a plausible claim for relief under both the United States Constitution and the Utah Constitution.

## I. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must "state a claim upon which relief can be granted," meaning their Complaint must allege "enough factual matter, taken as true, to make [their] 'claim to relief . . . plausible on its face.'"[17] In general, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[18] While the court "accept[s] all well-pleaded facts as true and view[s] them in the light most favorable to the plaintiff,"[19] the court will not accept as true "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[20]

---

[16] The State argues in its motion to dismiss that Plaintiffs failed to state a claim for relief under both procedural and substantive due process. But in their opposition papers, Plaintiffs clarify that they are alleging only a substantive due process violation. The court therefore analyzes only whether Plaintiffs have stated a valid claim for relief based on substantive due process.
[17] *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[19] *Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011) (quoting *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005)).
[20] *Iqbal*, 556 U.S. at 678.

## II. Federal Substantive Due Process Claim

The court now turns to Plaintiffs' federal substantive due process claim. The Due Process Clause of the Fourteenth Amendment commands that "[n]o State shall . . . deprive any person of their life, liberty, or property, without due process of law."[21] Under the so-called substantive component of the Due Process Clause, a state may not engage in conduct that "shocks the conscience" or otherwise "interferes with rights implicit in the concept of ordered liberty."[22] To determine whether a state has violated a right that substantive due process protects, a court must balance "the individual's interest in liberty against the State's asserted reasons for restraining individual liberty."[23]

Here, Plaintiffs allege that the State is unconstitutionally infringing on incompetent criminal defendants' liberty interest in being free from incarceration absent a criminal conviction as well as their liberty interest in receiving reasonably timely competency restoration treatment. The State is doing so, Plaintiffs allege, by holding incompetent defendants in jail for months on end after a court has ordered them committed to DHS's custody for the purpose of receiving competency restoration treatment. And while incompetent defendants are in jail awaiting transfer to USH, they are not receiving adequate mental health treatment. Plaintiffs also allege that no legitimate governmental interest justifies the lengthy detention of these defendants in jail without adequate treatment while they await transfer to USH.

---

[21] U.S. Const. amend. XIV, § 1. Constitutional challenges to the restrictions or conditions imposed on pretrial detainees are analyzed under the Fourteenth Amendment's Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520, 535 & n.16 (1979); *see also Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977) ("Where the State seeks to impose punishment without . . . an adjudication [of guilt], the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.").

[22] *United States v. Salerno*, 481 U.S. 739, 746 (1987) (citations omitted) (internal quotation marks omitted); *see also Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (stating that "the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government action regardless of the fairness of the procedures used to implement them" (citation omitted) (internal quotation marks omitted)).

[23] *Youngberg v. Romeo*, 457 U.S. 307, 320 (1982).

The State argues that Plaintiffs have failed to state a plausible claim under the Fourteenth Amendment's Due Process Clause because Plaintiffs have alleged neither an injury sufficient to demonstrate a substantive due process claim nor that the State has an unconstitutional interest in the incompetent defendants' incarceration. In particular, the State disputes the existence of Plaintiffs' asserted liberty interests. The State further argues that, even if incompetent criminal defendants enjoy the liberty interests asserted, the State's interests outweigh Plaintiffs' asserted liberty interests as a matter of law.

The court first examines whether incompetent criminal defendants enjoy the liberty interests Plaintiffs assert. The court then examines whether the State has a legitimate interest that justifies the alleged infringement on Plaintiffs' interest in liberty.

### A. Plaintiffs' Asserted Liberty Interests

Plaintiffs contend that incompetent criminal defendants who have been held in county jails for extended periods while they wait to receive court-ordered competency restoration treatment have a liberty interest in being free from incarceration absent a criminal conviction, as well as a liberty interest in receiving reasonably timely competency restoration treatment.

As explained below, the court concludes that Plaintiffs have adequately pled a plausible claim that the State is violating the Fourteenth Amendment rights of incompetent defendants by unconstitutionally infringing on their liberty interest in being free from incarceration absent a criminal conviction. The court therefore declines to address at this time whether incompetent defendants also enjoy a protectable liberty interest in receiving timely competency restoration treatment.[24]

---

[24] At the motion to dismiss stage, the court need only satisfy itself that Plaintiffs have pled a viable legal theory that entitles them to relief on the claim asserted, not that each of Plaintiffs' asserted theories are viable in themselves. *See Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (stating that a plaintiff survives a motion to dismiss so

The court now begins its analysis by examining the contours of Plaintiffs' asserted liberty interest in being free from incarceration absent a criminal conviction.[25] It is a "general rule" of substantive due process that a state "may not detain a person prior to a judgment of guilt in a criminal trial."[26] Three Supreme Court cases provide guidance on how the court is to interpret and apply this liberty interest as Plaintiffs assert it here.

In *Jackson v. Indiana*,[27] the Supreme Court held that "the nature and duration" of an incompetent criminal defendant's pretrial detention must "bear some reasonable relation to the purpose for which the individual" is detained.[28] And when a state detains a criminal defendant pretrial based on his incapacity to proceed to trial, the state may not detain him "more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future."[29] If there is not a substantial probability that he will attain capacity in the foreseeable future, then the state must either commence civil

---

long as the plaintiff's complaint contains "allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory" (citation omitted) (internal quotation marks omitted)); *see also Barrett v. Tallon*, 30 F.3d 1296, 1299 (10th Cir. 1994) ("A complaint should not be dismissed under Rule 12(b)(6) merely because plaintiff's allegations do not support the legal theory he intends to proceed on, . . . and certainly not when other theories are apparent on the face of the complaint.").

[25] *See Reno v. Flores*, 507 U.S. 292, 302 (1993) ("Substantive due process analysis must begin with a careful description of the asserted right, for the doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." (citation omitted) (internal quotation marks omitted)).

[26] *Salerno*, 481 U.S. at 749; *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." (citing *Foucha*, 504 U.S. at 80 ("Freedom from bodily restrain has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.")))); *Ingraham*, 430 U.S. at 673–74 ("While the contours of this historic liberty interest in the context of our federal system of government have not been defined precisely, they always have been thought to encompass freedom from bodily restraint and punishment." (citation omitted)).

[27] 406 U.S. 715 (1972).  In *Youngberg*, 457 U.S. at 320 n.27, the Supreme Court noted that *Jackson* is a procedural—not a substantive—due process case.  But in *Youngberg*, which is a substantive due process case, the Court cited to *Jackson* when it held that the involuntarily-committed respondent enjoyed "constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests," and that "[s]uch conditions of confinement would comport fully with the purpose of respondent's commitment."  *Id.* at 324 (citing *Jackson*, 406 U.S. at 738).  The court concludes it may properly rely on *Jackson* in this context.

[28] *Jackson*, 406 U.S. at 738.

[29] *Id.*

11

commitment proceedings or release the defendant.[30] Where "the defendant probably soon will be able to stand trial, his continued [detention] must be justified by progress toward that goal."[31]

Several years after deciding *Jackson*, the Court in *Bell v. Wolfish* considered a substantive due process challenge to the restrictions and conditions of pretrial detention.[32] In stressing that a pretrial detainee "may not be punished prior to an adjudication of guilt,"[33] the Court held that the liberty component of the Due Process Clause protects a pretrial detainee from restrictions and conditions of detention that amount to punishment.[34] To determine whether a particular restriction or condition of pretrial detention amounts to punishment, "[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."[35] Unless there is evidence "of an expressed intent to punish . . . , that determination generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it."[36]

Similar to the analysis articulated in *Jackson*, courts evaluating whether a restriction or condition of pretrial detention is excessive must determine whether "a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective."[37] If it is, then the imposition of the restriction or condition does not amount to punishment.[38] But "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is

---

[30] *Id.*
[31] *Id.*
[32] 441 U.S. at 523.
[33] *Id.* at 535.
[34] *Id.* at 534–37.
[35] *Id.* at 538 (citation omitted).
[36] *Id.* (citation omitted) (internal quotation marks omitted).
[37] *Id.* at 539 (footnote omitted).
[38] *Id.*

punishment that may not constitutionally be inflicted upon detainees."[39]

Finally, the Court held in *Youngberg v. Romeo* that a court can perform the balancing required under the substantive due process clause by ensuring that the restriction or condition imposed on a pretrial detainee is the result of judgment exercised by a qualified professional.[40] A decision made by a professional is presumptively valid.[41] And a court may impose liability "only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment."[42]

These cases establish that incompetent criminal defendants—as pretrial detainees—have a liberty interest in being free from incarceration absent a criminal conviction. Whether the State has unconstitutionally infringed on that interest turns on whether it has imposed restrictions or conditions of confinement that amount to punishment.[43] This requires the court to determine whether the restrictions or conditions imposed are reasonably related to a legitimate government interest. If they are, then the imposition of the restrictions or conditions does not amount to punishment. But if they are not, then the court may infer that the State intended to impose unconstitutional punishment. In performing this analysis, the court need only ensure that the restrictions or conditions imposed are the result of judgment rendered by a qualified professional.

---

[39] *Id.* (footnote omitted) (citation omitted).
[40] 457 U.S. at 322; *see also Advocacy Ctr. for Elderly & Disabled v. La. Dep't of Health & Hosps.*, 731 F. Supp. 2d 603, 609 (E.D. La. 2010) ("In *Youngberg v. Romeo*, the Court held that this balancing can be accomplished by making certain that the condition of the inmate's confinement resulted from the exercise of professional judgment.").
[41] *Youngberg*, 457 U.S. at 323.
[42] *Id.*
[43] To determine whether restrictions or conditions of pretrial detention amount to punishment, the court ordinarily must first examine whether the State expressly intended to impose punishment. *See Salerno*, 481 U.S. at 747. The court need not undertake this examination, however, because Plaintiffs do not here allege that the State is intentionally imposing punishment on incompetent defendants.

### B. Whether the State Has a Legitimate Interest That Justifies the Alleged Infringement on Plaintiffs' Interest in Liberty

Having concluded that Plaintiffs have a protectable liberty interest in being free from incarceration absent a criminal conviction, the next step in the court's substantive due process analysis is to determine whether the State has a legitimate governmental interest that justifies holding incompetent criminal defendants in jail for extended periods while they await court-ordered competency restoration treatment at USH.

The State asserts two interests.[44] But before addressing those asserted interests, the court pauses to focus on the precise period during an incompetent defendant's criminal proceeding at issue in this case. The court is not concerned here with the State's initial decision to deny bail and detain a defendant pretrial based on a finding that he poses a substantial danger to the community or a risk of flight before trial. Nor does this case present issues involving a trial court's declaration that a defendant is incompetent to stand trial. And the court is likewise unconcerned here with what occurs after a court has evaluated whether the defendant has attained competency or whether there is a substantial probability that he will attain competency in the foreseeable future. Instead, this case and the State's motion to dismiss focus on the period between a court's declaration that a defendant is incompetent to stand trial and that court's later evaluation (after transfer to USH for assessment and treatment) of whether there is a substantial probability that he will attain competency in the foreseeable future.

The court now turns to the State's first asserted interest. The State contends that its interest in initially denying bail and detaining criminal defendants who pose a danger to the community or a risk of flight before trial justifies its continued detention of criminal defendants

---

[44] The State also contends that it has an interest in preserving its limited financial resources. The court declines to consider this argument, however, because the State made it for the first time in its reply brief. *See Hornady Mfg. Co. v. DoubleTap Ammunition, Inc.*, 2013 WL 1622099, at *1 (D. Utah Apr. 15, 2013).

after they have been declared incompetent to stand trial.  To be sure, the State has a substantial interest in initially detaining a criminal defendant who is dangerous or a flight risk before trial.[45]  But once a court declares a defendant incompetent to stand trial, that interest is displaced by the State's interest in "determin[ing] whether there is a substantial probability that he will attain [] capacity in the foreseeable future."[46]  Indeed, the court reads *Jackson* to suggest that a state's interest in, and sole justification for, continuing to detain a defendant pretrial after he has been declared incompetent—opposed to releasing him—is to evaluate whether there is a substantial probability that he will become competent in the foreseeable future.

The Utah Code confirms that this is the State's relevant interest upon a declaration of incompetency.  Section 77-15-6 of the Utah Code provides that, after a trial court declares a defendant incompetent to stand trial and the State elects to continue prosecuting the defendant, the court's next step is to evaluate whether the defendant has attained competency or whether there is a substantial probability that he will attain competency in the foreseeable future.[47]

Certainly, the State may later detain a defendant pretrial because of his dangerousness or risk of flight if he attains competency down the road and his criminal prosecution resumes.[48]  Or the State may seek civil commitment under certain circumstances if there is not a substantial probability that a defendant will become competent in the foreseeable future and he is likely to harm himself or others.[49]  But once a criminal defendant is initially declared incompetent to

---

[45] *See* Utah Code § 77-20-1(c); *see also Salerno*, 481 U.S. at 747–50 (holding that the government may detain a criminal defendant pretrial if he presents a danger to the community); *Bell*, 441 U.S. at 536 (stating that the government may detain a criminal defendant pretrial to ensure his appearance at trial if he is a flight risk).
[46] *Jackson*, 406 U.S. at 738.
[47] *See* Utah Code § 77-15-6(2)–(5).
[48] *See id.* § 77-15-6(5)(a) (stating that if the court finds that the defendant has regained competency, then "the court shall proceed with the trial or other procedures as may be necessary to adjudicate the charges"); *see also id.* § 77-20-1(5) ("A motion to modify the initial [bail] order may be made by a party at any time upon notice to the opposing party . . . .")
[49] *See id.* § 62A-5-311(1).

stand trial, the State's sole interest in further detaining him is to evaluate whether there is a substantial probability that he will attain competency in the foreseeable future. And until that evaluation occurs, it is unknown whether the criminal proceeding will ever resume, let alone whether the State's interest in protecting the community or in assuring the defendant's appearance at trial will be implicated again.

  The State's second asserted interest suffers from a similar defect. The State claims that it has an interest in efficiently restoring incompetent criminal defendants to competency so they may quickly and fairly be tried, and that this interest justifies holding those defendants in jail for months pending transfer to USH. But this interest is relevant to only a subset of incompetent defendants: those who have been evaluated and been found to have a substantial probability of attaining capacity in the foreseeable future. Stated otherwise, until a court evaluates whether there is a substantial probability that an incompetent defendant will attain competency in the foreseeable future, it is unknown whether the State's interest in restoring that defendant to competency will be implicated at all.

  Whether the State's interest is in evaluating whether there is a substantial probability that incompetent defendants can be restored to competency, or whether its interest is in actually restoring them to competency, neither interest is reasonably related to the restrictions and conditions of incompetent defendants' pretrial detention.[50] To the contrary, Plaintiffs allege the

---

[50] *See, e.g.*, *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003) (holding that the state hospital had no "legitimate state interest in keeping mentally incapacitated criminal defendants locked up in county jails for weeks or months" while they awaited transfer to the hospital so they could receive competency restoration treatment); *Trueblood v. Wash. State Dep't of Soc. & Health Servs.*, 73 F. Supp. 3d 1311, 1315 (W.D. Wash. 2014) (finding the State had no legitimate state interest in keeping incompetent criminal defendants in county jails for weeks or months while they awaited transfer to a state hospital to receive competency restoration treatment, and rejecting the State's argument that they had a "legitimate interest in *reasonable* delays before provision of competency services"); *Terry ex rel. Terry v. Hill*, 232 F. Supp. 2d 934, 943 (E.D. Ark. 2002) (holding that the delay in transferring court-ordered pretrial detainees to the state hospital for competency restoration treatment "is not related to any legitimate goal" and "is purposeless").

State is undermining these interests by holding incompetent defendants in county jails for months without providing them adequate mental health treatment after a court has ordered them committed to DHS's custody for restorative treatment.[51]

As discussed above, once a Utah trial court determines that a criminal defendant is incompetent to stand trial, the court must order the defendant committed to the custody of DHS "for the purpose of treatment intended to restore the defendant to competency."[52]  After DHS has transferred the defendant to USH—the only facility in Utah that provides competency restoration treatment to incompetent criminal defendants—the court's next step is to evaluate whether the defendant has attained competency or whether there is a substantial probability that he will attain competency in the foreseeable future.[53]

But because USH is currently full, Plaintiffs allege, incompetent defendants are placed on a lengthy waiting list.  As a result, many incompetent defendants are forced to languish in county jails for months before being transferred to USH.  These defendants are kept in jail not because they have been found guilty of a crime, but because there is simply no room for them at USH.

Plaintiffs also contend that incompetent defendants who are awaiting transfer to USH are not receiving any adequate mental health treatment while in jail, let alone treatment that is the result of professional judgment.  These defendants are not receiving the intensive individualized care and treatment they would receive at USH.  Nor are they are receiving any actual treatment under the State's pilot program.  Instead, under the program, a USH staff member periodically meets with incompetent defendants for about thirty minutes to discuss a booklet on competency.

---

[51] *See, e.g., Trueblood*, 73 F. Supp. 3d at 1316 ("There is . . . no legitimate independent interest in delays within the system because delays undermine the state's 'primary governmental interest' of bringing the accused to trial.").
[52] Utah Code § 77-15-6(1).
[53] *Id.* § 77-15-6(4)–(5).

Plaintiffs further assert that Utah's jails are ill equipped to handle the challenges posed by inmates suffering from mental health disorders. Jails often place incompetent defendants in solitary confinement or protective custody to minimize disruption and maintain order. For example, Plaintiffs claim that S.B. hears voices, talks to himself, and has been placed on suicide watch; A.U spends twenty-three to twenty-four hours per day in solitary confinement and hears voices that tell him to kill himself; and S.W. has been placed in protective custody after suffering physical abuse at the hands of jail staff.

At bottom, between these conditions and the lack of adequate mental health treatment, Plaintiffs have sufficiently alleged facts showing that the mental health condition of many incompetent defendants deteriorates while in jail, making it unlikely that they will attain competency in the foreseeable future.

Plaintiffs' allegations show that the restrictions and conditions of incompetent defendants' detention amount to punishment. The State detains incompetent defendants for months without adequate mental health treatment after a court has ordered them committed to DHS's custody to receive restorative treatment. This is neither to restore their competency nor to evaluate whether their competency can be restored. And there is no suggestion that the length of their detention, or the lack of adequate treatment, is the product of professional judgment. The State imposes these conditions on incompetent criminal defendants simply because there is no room at USH.

The lengthy detention of incompetent defendants in county jails without adequate mental health treatment is not reasonably related to the State's interest in determining whether there is a substantial probability that the defendants' competency can be restored in the foreseeable future

or to its interest in actually restoring their competency so they may quickly and fairly be tried.[54] The State is instead undermining these goals by holding incompetent defendants in jail for months without providing them adequate treatment.

Taking the facts alleged in Plaintiffs' Complaint as true, Plaintiffs have stated a plausible claim for relief under the Due Process Clause of the Fourteenth Amendment.

### III.    State Substantive Due Process Claim

The court now turns to Plaintiffs' claim that the State is depriving incompetent criminal defendants of their substantive due process rights under the Utah Constitution.

Article I, section 7 of the Utah Constitution states that "[n]o person shall be deprived of life, liberty or property, without due process of law."[55]  Both parties urge the court to interpret the Utah Constitution's due process clause coextensively with the United States Constitution's Due Process Clause.  The Utah Supreme Court has stated:

> Since the due process clause of our state Constitution (Article I, Section 7) is substantially similar to the Fifth and Fourteenth Amendments to the federal Constitution, the decisions of the Supreme Court of the United States on the federal due process clauses are highly persuasive as to the application of that clause of our state Constitution.[56]

Based on the foregoing statement, the court finds that its analysis of Plaintiffs' federal

---

[54] *See, e.g.*, *Mink*, 322 F.3d at 1122 ("Holding incapacitated criminal defendants in jail for weeks or months violates their due process rights because the nature and duration of their incarceration bear no reasonable relation to the evaluative and restorative purposes for which courts commit those individuals."); *Trueblood*, 73 F. Supp. 3d at 1317 ("Defendants' failure to provide timely competency evaluation and restoration services to Plaintiffs and class members has caused them to languish in city and county jails for prolonged periods of time, and . . . this failure violates their right to substantive due process under the Fourteenth Amendment."); *Advocacy Ctr. for Elderly & Disabled*, 731 F. Supp. 2d at 621 ("[T]he continued imprisonment of the Incompetent Detainees in parish jails—even with the scant additional services provided by [the] jail-based treatment program—does not bear a reasonable relationship to either restoring the Detainees to competency or determining that they will never become competent."); *Terry*, 232 F. Supp. 2d at 943 (holding that "the delay in transferring court ordered pretrial detainees" to the state hospital for restorative treatment "amounts to punishment of the detainees," and that "the prolonged wait in confinement[] transgresses the constitution").
[55] Utah Const. art. I, § 7.
[56] *Terra Utils., Inc. v. Pub. Serv. Comm'n*, 575 P.2d 1029, 1033 (Utah 1978) (citing *Untermyer v. State Tax Comm'n*, 129 P.2d 88, 885 (Utah 1942)).

substantive due process claim applies with equal force to Plaintiffs' due process claim under the Utah Constitution. Without delving into the issue further at this stage, the court concludes that Plaintiffs have stated a plausible claim for relief under article I, section 7 of the Utah Constitution.

## CONCLUSION

For the reasons stated above, the court DENIES the State's motion to dismiss (Dkt. 37).

SO ORDERED this 7th day of April, 2016.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge