IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| DISABILITY LAW CENTER, a Utah nonprofit corporation; S.B., an individual, by and through his next friend Margaret Goodman; A.U., by and through his next friend Mary Eka; and S.W., an individual,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF UTAH; UTAH DEPARTMENT OF HUMAN SERVICES; ANN WILLIAMSON, in her official capacity as Executive Director of the Utah Department of Human Services; UTAH DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH; DOUGLAS THOMAS, in his official capacity as Director of the Utah Division of Substance Abuse and Mental Health; UTAH STATE HOSPITAL; DALLAS EARNSHAW, in his official capacity as Superintendent of Utah State Hospital,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:15-cv-00645-RJS<br><br>Judge Robert J. Shelby |

This case is about the substantive due process rights of pretrial detainees who have been declared incompetent to stand trial.  Plaintiffs bring this putative class action against the State of Utah, the Utah Department of Human Services (DHS), the Utah Division of Substance Abuse and Mental Health, the Utah State Hospital (USH), and several related individuals (collectively, the State) under 42 U.S.C. § 1983, seeking declaratory and injunctive relief.  Plaintiffs allege that the State holds incompetent pretrial detainees in jails for extended periods while the detainees wait to receive court-ordered competency restoration services.  Plaintiffs contend that these

prolonged periods of detention violate the detainees' constitutional rights.

Defendants previously moved to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted.  The court denied that motion in a Memorandum Decision and Order issued on April 7, 2016.  Plaintiffs now move the court to certify their proposed class and to appoint class counsel.  For the reasons stated below, the court grants Plaintiffs' Motion.

## BACKGROUND

The State has a statutorily defined procedure for identifying incompetent persons charged with a crime and for providing those persons with competency restoration treatment so their guilt or innocence can be determined at trial.  This procedure does not appear to be working.

Utah law provides that a criminal defendant declared mentally incompetent shall not be tried for a criminal offense.[1]  When a criminal defendant's competency to stand trial is raised, the trial court must stay all proceedings and review the allegations of incompetency.[2]  If the court determines that the allegations raise a bona fide doubt concerning the defendant's competency, then the court "shall order an examination of the defendant and a hearing on the defendant's mental condition."[3]  And if the court concludes after a hearing that the defendant is incompetent to stand trial, then "the court shall order the defendant committed to the custody of the executive director of [DHS] or a designee for the purpose of treatment intended to restore the defendant to competency."[4]  The director or a designee must then "designate the specific placement of the defendant during the period of evaluation and treatment."[5]

In most cases, the director transfers an incompetent defendant to USH, where treatment teams provide intensive individualized care and treatment in an effort to restore the defendant's

[1] Utah Code § 77-15-1.
[2] *Id.* § 77-15-5(1)(a)–(b).
[3] *Id.* § 77-15-5(1)(b)(v).
[4] *Id.* § 77-15-6(1).
[5] *Id.*

competency.  But USH is full—meaning that incompetent defendants cannot be transferred until space becomes available.  Wait times to get into USH have grown from about 30 days to 180 days since 1985.  And the wait list has fluctuated from 15 incompetent defendants in 2013, to over 50 in late July 2015, to 39 in early June 2016.  Meanwhile, those waitlisted individuals most often wait in the county jails in which they are detained pretrial until space becomes available at USH.  And they ordinarily do so without receiving restorative treatment.

In response to this growing problem, the State began a pilot program in July 2014, under which a USH staff member periodically visits incompetent defendants in jail for thirty minutes to discuss a booklet on competency.  The pilot program became the current Outreach Program in July 2015.  It is unclear at this early stage of the proceedings what in-jail treatment incompetent defendants receive under the Outreach Program.  Nonetheless, 28 incompetent defendants have been restored to competency under the current Outreach Program, and a total of 38 incompetent defendants have been restored under both programs since July 2014.

Named Plaintiffs Disability Law Center (DLC), S.B., A.U., and S.W. bring this putative class action under 42 U.S.C. § 1983 on behalf of themselves and those similarly situated.  DLC is a federally authorized and funded nonprofit corporation.  It advocates for and seeks to protect the rights of people with disabilities, including individuals with mental illness.

S.B. is a criminal defendant who was declared incompetent in March 2015.  S.B. was on USH's wait list for almost six months when Plaintiffs filed this lawsuit.  S.B. has since gained admission to USH, been declared competent, and been discharged from USH.  A.U. was also declared incompetent, and spent over five months in county jail while waiting to be admitted to USH.  A.U. has since regained competency.  S.W. similarly waited five months in jail after being declared incompetent before gaining admission to USH.  S.W. was still receiving treatment at

USH when the parties briefed the present Motion.

Plaintiffs seek declaratory and injunctive relief.  They contend that the State is depriving incompetent defendants of their substantive due process rights under the Fourteenth Amendment to the United States Constitution and article I, section 7 of the Utah Constitution by holding these defendants in jail for unreasonable periods while they wait to receive court-ordered competency restoration treatment.

The State moved to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6).  The court denied the State's motion in a Memorandum Decision and Order issued in April 2016.[6]  The court concluded that incompetent criminal defendants have a substantive due process right to be free from incarceration absent a criminal conviction.[7]  The court explained that "[w]hether the State has unconstitutionally infringed on that interest turns on whether it has imposed restrictions or conditions of confinement that amount to punishment."[8]  And whether the State has imposed punishment depends on "whether the restrictions or conditions imposed are reasonably related to a legitimate government interest."[9]  "In performing this analysis, the court need only ensure that the restrictions or conditions imposed are the result of judgment rendered by a qualified professional."[10]

Having survived the State's motion to dismiss, Plaintiffs now move for class certification and for the appointment of class counsel.  Plaintiffs' proposed class is defined as:

> all individuals who are now, or will be in the future, (a) charged with a crime in Utah, (b) are determined by the court in which they are charged to be mentally incompetent to stand trial, and (c) are ordered to the custody of the executive director of [DHS] or a designee for the purpose of treatment intended to restore

---

[6] Dkt. 51.
[7] *Id.* at 13.
[8] *Id.* (citation omitted).
[9] *Id.*
[10] *Id.*

the defendant to competency but remain housed in a Utah county jail.[11]

## ANALYSIS

Class actions are an exception to the general rule that only individually named parties may conduct litigation.[12]  To justify departure from that rule, the party seeking class certification must satisfy Rule 23's "stringent" requirements under a "strict burden of proof."[13]  Rule 23(a) first requires the party seeking class certification to establish (1) numerosity: that "the class is so numerous that joinder of all members is impracticable"; (2) commonality: that "there are questions of law or fact common to the class"; (3) typicality: that "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) adequacy of representation: that "the representative parties will fairly and adequately protect the interests of the class."[14]  The party seeking certification must also establish "through evidentiary proof at least one of the provisions of Rule 23(b)."[15]  Plaintiffs here seek to certify a Rule 23(b)(2) class, alleging that the State "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."[16]

While the court "must accept the substantive allegations of the complaint as true," "Rule 23 does not set forth a mere pleading standard."[17]  Indeed, the court "need not blindly rely on conclusory allegations of the complaint which parrot Rule 23."[18]  And the "party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be

[11] Dkt. 18 at 2.
[12] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011).
[13] *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 435 (10th Cir. 1978).
[14] Fed. R. Civ. P. 23(a).
[15] *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1217 (10th Cir. 2013) (citation omitted) (internal quotation marks omitted).
[16] Fed. R. Civ. P. 23(b).
[17] *Dukes*, 564 U.S. at 350.
[18] *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citation omitted) (internal quotation marks omitted).

5

prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."[19]

Further, the court must perform a "rigorous analysis" to ensure Rule 23's requirements have been met.[20]  This analysis may overlap with the merits of the underlying claim,[21] in which case the court "is not limited to the pleadings but may 'probe behind the pleadings' and examine the facts and evidence in the case."[22]  But "the court should not pass judgment on the merits of the case at the class certification stage."[23]  And the court may alter, expand, or vacate a certified class as the case develops.[24]

Below, the court examines whether Plaintiffs have established Rule 23(a)'s requirements, before analyzing whether Plaintiffs have satisfied Rule 23(b)(2).  In the end, the court concludes that Plaintiffs have met their burden under Rule 23, and that class certification is appropriate.

## I.  Rule 23(a)

As stated, "Rule 23(a) requires numerosity of class members, commonality of at least one question of fact or law among the class, typicality of named plaintiffs' claims or defenses to the class's claims or defenses, and adequacy of the named plaintiffs and their attorneys as class representatives."[25]  The court addresses each requirement in turn.

### A.  Numerosity

The party seeking certification must establish that the proposed "class is so numerous that joinder is impracticable."[26]  "The numerosity requirement requires examination of the specific

---

[19] *Id.*
[20] *Id.* at 350–51.
[21] *Id.* at 351.
[22] *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1227–28 (10th Cir. 2013) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).
[23] *Devaughn*, 594 F.3d at 1194.
[24] *Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 602 (D. Colo. 1990).
[25] *Devaughn*, 594 F.3d at 1194 (footnote omitted).
[26] Fed. R. Civ. P. 23(a)(1).

facts of each case and imposes no absolute limitations."[27]  While there must be "some evidence

of established, ascertainable numbers constituting the class," there is "no set formula" to proving

that a class is sufficiently numerous.[28]

Several factors are relevant in determining whether a class is so numerous that joinder is

impracticable.[29]  Those factors include the class size, the geographic diversity of class members,

the relative ease or difficulty in identifying class members, the nature of the action, the size of

the individual claims, and the ability of class members to institute individual lawsuits.[30]  Each

factor weighs in favor of finding numerosity.

First, "[i]n determining class size, the exact number of potential members need not be

shown."[31]  Here, over 50 incompetent criminal defendants were on USH's wait list in late July

2015, while 39 were on the wait list in early June 2016.  The proposed class also includes future

criminal defendants who are declared incompetent, but remain housed in a county jail after being

placed in the custody of DHS's director or a designee to receive restorative treatment.  Although

the exact number of these future members cannot be ascertained, proof of "absolute numbers" is

not required when the class proponent seeks injunctive or declaratory relief.[32]  The size of the

class weighs in favor of finding numerosity.

Second, "that a class is dispersed over several counties weighs in favor of a finding of

---

[27] *Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1214 (10th Cir. 2014) (citation omitted) (internal quotation marks omitted).
[28] *Rex*, 585 F.2d at 436.
[29] *See Abercrombie*, 765 F.3d at 1215.
[30] *See id.*; *Colo. Cross-Disability Coal. v. Taco Bell Corp.*, 184 F.R.D. 354, 357 (D. Colo. 1999).
[31] *Taco Bell*, 184 F.R.D. at 358.
[32] *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 276 (10th Cir. 1977); *see also Abercrombie*, 765 F.3d at 1225 (McHugh, J., concurring in part and dissenting in part) (recognizing that "proof of absolute numbers is unnecessary, at least in the context of injunctive or declaratory relief" (citation omitted) (internal quotation marks omitted)); *Jackson v. Danberg*, 240 F.R.D. 145, 147–48 (D. Del. 2007) (finding numerosity in a § 1983 action where the proposed class consisted of only sixteen members, and noting that "the numerosity requirement has been relaxed in cases like this where injunctive and declaratory relief is sought by the class" and "the identity of the members of the putative class may change" while the class's defining characteristics remain the same).

numerosity."[33]  Here, the proposed class includes incompetent defendants dispersed throughout Utah.  The geographic diversity of class members weighs in favor of numerosity.

Third, joinder is impracticable where individual class members are difficult to identify.[34] To be sure, the identity of many class members can be ascertained by examining the most recent USH wait list.  But the class's composition is fluid as incompetent defendants are added to the list and others are transferred to USH for treatment.  Because the class includes individuals who will become members in the future, "[a]s members *in futuro*, they are necessarily unidentifiable," making joinder impracticable.[35]  "[T]hat the class includes unknown, unnamed future members . . . weighs in favor of certification."[36]

Finally, "if individual claims are small and/or class members are financially unable to fund litigation themselves, individual joinder may be practically impossible."[37]  Plaintiffs here seek only injunctive and declaratory relief, meaning there is no economic incentive that would justify the cost of individual litigation.  And although a prevailing party in a § 1983 action may recover attorneys' fees under 42 U.S.C. § 1988(b), many class members are likely indigent and unable to fund a lawsuit at the outset.  The court concludes that individual class members would be deterred from bringing individual lawsuits based on the nature of the action and the size of individual claims.  The proposed class is sufficiently numerous that joinder is impracticable.

### B. Commonality

Next, the class proponent must establish that "there are questions of law or fact common

---

[33] *Taco Bell*, 184 F.R.D. at 358.

[34] *See id.* at 358–59.

[35] *Skinner v. Uphoff*, 209 F.R.D. 484, 488 (D. Wyo. 2002).

[36] *Jones v. Gusman*, 296 F.R.D. 416, 465 (E.D. La. 2013) (quoting *Pederson v. La. State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000)).

[37] William B. Rubenstein, *Newberg on Class Actions* § 3:11 (5th ed. 2016); *see also Taco Bell*, 184 F.R.D. at 359 (recognizing that "one of the central tenets of Rule 23 is that a class action permits plaintiffs, if their claims for damages are too small to justify the costs of litigation, the ability to seek redress" (citing *Deposit Guar. Nat'l Bank, Jackson, Miss.v. Roper*, 445 U.S. 326, 338 n.9 (1980))).

to the class."[38]  To satisfy this requirement, the class members' claims must turn on a common contention that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[39]  "What matters to class certification . . . [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."[40]  That said, "[a] finding of commonality requires only a single question of law or fact common to the entire class."[41]

Here, common questions exist.  The common questions of fact include whether incompetent defendants who are committed to the custody of DHS's director or a designee to receive court-ordered competency restoration treatment spend extended periods in county jails before receiving adequate treatment; and if so, whether the State uses a procedure to ensure that those delays, and the place and manner of that treatment, are the product of judgment rendered by a qualified professional.  The answers to those questions of fact may implicate a common question of law: whether the State violates the substantive due process right of incompetent defendants to be free from conditions or restrictions of confinement that amount to punishment absent a criminal conviction by keeping those defendants in jail for extended periods while they wait to receive competency restoration treatment that is the product of professional judgment.

The State argues that class certification is inappropriate because resolution of Plaintiffs' claims requires individual analysis in view of the individualized assessment and treatment each incompetent defendant receives.  After all, each incompetent defendant receives a competency-restoration plan tailored specifically to his needs.  And each defendant is evaluated individually to determine whether he has attained competency.  Each of these individual circumstances, the

---

[38] Fed. R. Civ. P. 23(a)(2).
[39] *Wal-Mart*, 564 U.S. at 350.
[40] *Id.* (citation omitted) (internal quotation marks omitted).
[41] *Devaughn*, 594 F.3d at 1195.

State maintains, introduces factual differences that make Plaintiffs' claims unfit for classwide resolution.

But "[e]very member of the class need not be in a situation identical to that of the named plaintiff to meet Rule 23(a)'s commonality" requirement.[42]  And "[f]actual differences between class members' claims do not defeat certification where common questions . . . exist."[43]  While dissimilarities are relevant to whether a single common question exists,[44] the State appears to detain all incompetent criminal defendants in county jails for extended periods irrespective of their individual circumstances and without reliance on a professional's judgment.  In view of the common questions identified above, the court concludes that the individual circumstances noted by the State do not defeat certification.

The State also contends that Plaintiffs' asserted injury rests on the type of "allegation of systemic failures" the Tenth Circuit held in *J.B. ex rel. Hart v. Valdez*[45] is insufficient to establish commonality.  In *Valdez*, the named plaintiffs, mentally and developmentally disabled children, alleged that multiple state agencies failed to provide disabled children in the agencies' custody the protections and therapeutic services required by several federal statutes and the United States Constitution.[46]  The district court ruled that the named plaintiffs failed to establish that there was a common question of law because "there [was] no one statutory or constitutional claim common to all named Plaintiffs and all putative class members."[47]  The Tenth Circuit affirmed, and noted that the named plaintiffs "merely attempt[ed] to broadly conflate a variety of claims to establish commonality via an allegation of 'systemic failures.'"[48]

---

[42] *Id.* (citation omitted) (internal quotation marks omitted).

[43] *Id.*

[44] *See Wal-Mart*, 564 U.S. at 359.

[45] 186 F.3d 1280, 1289 (10th Cir. 1999).

[46] *Id.* at 1282.

[47] *Id.* at 1289.

[48] *Id.*

But here, Plaintiffs have not conflated a variety of legal claims based on an allegation of systemic failures.  Rather, their common claims are based solely on their substantive due process rights under the United States Constitution and the Utah Constitution.[49]  Plaintiffs have satisfied the commonality requirement.

## C.  Typicality

A party requesting class certification must also establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."[50]  "To maintain a class action, a 'class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'"[51]  Even so, "[t]he interests and claims of Named Plaintiffs and class members need not be identical to satisfy typicality."[52]  And "differing fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory."[53]

The typicality requirement is met here.  Plaintiffs and the proposed class members assert the same interest: the right to be free from conditions or restrictions of pretrial confinement that amount to punishment absent a criminal conviction.  They also assert the same injury: denial of that right due to their extended periods of pretrial detention in county jails after being declared incompetent and being transferred to the custody of DHS's executive director or a designee to receive restorative treatment.[54]  Also, Plaintiffs' claims and the class members' claims are based

---

[49] The State also urges the court to rely on *Shook v. Board of County Commissioners of El Paso* ("*Shook II*"), 543 F.3d 597 (10th Cir. 2008), to conclude that Plaintiffs have failed to satisfy the commonality requirement.  But the *Shook II* court affirmed the district court's decision to not certify the proposed class on Rule 23(b)(2) grounds, not on commonality grounds.  *See id.* at 600–07.  That case is therefore inapplicable here.

[50] Fed. R. Civ. P. 23(a)(3).

[51] *Abercrombie*, 765 F.3d at 1216 (quoting *Wal-Mart*, 564 U.S. at 348–49).

[52] *Devaughn*, 594 F.3d at 1198.

[53] *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988).

[54] *See Abercrombie*, 765 F.3d at 1217 (finding commonality and typicality satisfied where "[t]he interest asserted . . . is the same—the right to be free from disability discrimination in a place of public accommodation—as is the alleged injury—denial of that right by porches at Hollister stores," and the claims of the named plaintiffs and the

on the same legal and remedial theory: that the substantive due process right of incompetent defendants requires injunctive relief against the allegedly unconstitutional delays.[55]

The State again notes that each Plaintiff and each proposed class member receives, or will receive, an individualized competency-restoration plan based on each individual's circumstances. The State argues that these individual circumstances preclude a finding of typicality.  The Tenth Circuit's decision in *DG ex rel. Stricklin v. Devaughn* is instructive.

In *Devaughn*, the named plaintiffs alleged that a state agency's "agency-wide foster care policies and practices expose[d] all class members to an impermissible risk of harm," in violation of their substantive due process and other constitutional rights.[56]  Each proposed class member received "an individualized and specific placement, treatment, and service plan that necessarily change[d] based on evolving circumstances and the unique characteristics of each child."[57]  Even though the agency insisted that an individualized analysis of the claims was necessary in view of each proposed class member's unique circumstances,[58] the Tenth Circuit agreed with the district court that typicality existed because "all class members [were] at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances."[59]

Similarly, while each incompetent defendant receives an individualized treatment plan, each potential class member appears to be subject to the State's practice of detaining incompetent defendants in county jails for extended periods before providing them restorative treatment.

Finally, the State maintains that Plaintiffs' claims are not typical of class members' claims because some class members are restored to competency under the Outreach Program.  But "[a]

---

class members "are based on the same legal and remedial theory—that Title III of the ADA mandates injunctive relief against the porches").
[55] *See id.*
[56] 594 F.3d at 1192–93.
[57] *Id.* at 1195.
[58] *Id.*
[59] *Id.* at 1199.

12

class will often include persons who have not been injured by the defendant's conduct."[60]  And "[s]uch a possibility or indeed inevitability does not preclude class certification."[61]  Plaintiffs have satisfied the typicality requirement.

### D.  Adequacy of Representation

Rule 23(a)'s final prerequisite to certification requires a class proponent to establish that "the representative parties will fairly and adequately protect the interests of the class."[62]  Courts assess adequacy of representation by asking (1) whether "the named plaintiffs and their counsel have any conflicts of interest with other class members," and (2) whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class."[63]

First, neither Plaintiffs nor their counsel have any conflicts of interests with other class members.  Plaintiffs and putative class members have a shared interest in ensuring that criminal defendants who are declared incompetent and are placed in the custody of DHS's director or a designee do not wait in jails for extended periods before receiving restorative treatment.

Second, there is no dispute that Plaintiffs and their counsel will prosecute this action vigorously on behalf of the proposed class.  Nor is there any dispute that Plaintiffs' proposed class counsel—DLC's counsel and the law firm Snell & Wilmer LLP—satisfy Rule 23(g)'s requirements.

Plaintiffs are adequate representatives of the proposed class.  The court appoints DLC's counsel and the Snell & Wilmer LLP law firm as class counsel.

## II.  Rule 23(b)(2)

Having concluded that Plaintiffs satisfy Rule 23(a)'s four requirements, the court now

---

[60] *Id.* at 1198 (citation omitted) (internal quotation marks omitted).
[61] *Id.* (citation omitted) (internal quotation marks omitted).
[62] Fed. R. Civ. P. 23(a)(4).
[63] *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (citation omitted) (internal quotation marks omitted).

examines whether Plaintiffs have satisfied the requirements of one of Rule 23(b)'s provisions. Plaintiffs seek class certification under Rule 23(b)(2), which authorizes certification where the proponent shows (1) that "the defendants' actions or inactions [are] based on grounds generally applicable to all class members," and (2) that "final injunctive relief [is] appropriate for *the class as a whole*."[64]

The Rule "authorizes an inquiry into the relationship between the class, its injuries, and the relief sought."[65]  And it "demands a certain cohesiveness among class members with respect to their injuries."[66]  This cohesiveness inquiry depends on whether a classwide injunction can "state its terms specifically[,] and describe in reasonable detail . . . the act or acts restrained or required,"[67] and whether "relief specifically tailored to each class member would be necessary to correct the allegedly wrongful conduct of the defendant."[68]  At bottom, "the class members' injuries must be sufficiently similar that they can be addressed in a single injunction that need not differentiate between class members."[69]

These requirements are satisfied here.  First, the State allegedly detains incompetent defendants in county jails for extended periods after a court has committed them to the custody of DHS's executive director or a designee on grounds generally applicable to all class members: there is no room at USH.  While some class members may attain competency under the Outreach Program, the State seemingly implemented that program for the same reason many incompetent defendants must wait in jail for extended periods after being declared incompetent: USH is full.

---

[64] *Shook II*, 543 F.3d at 604; *see* Fed. R. Civ. P. 23(b)(2) (authorizing class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole").

[65] *Shook II*, 543 F.3d at 604.

[66] *Id.*

[67] *Id.* (quoting Fed. R. Civ. P. 65(d)(1)).

[68] *Id.* (citation omitted) (internal quotation marks omitted).

[69] *Id.*; *see also Wal-Mart*, 564 U.S. at 360 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.  It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant.").

Second, proposed class members' injuries are amply similar that they can be remedied through an injunction that does not differentiate between Plaintiffs or proposed class members. Plaintiffs' chief complaint is that there is an unreasonable delay between the date a court declares a criminal defendant incompetent and the date that defendant receives competency restoration treatment in a place and manner that is the product of judgment rendered by a qualified professional. Plaintiffs here seek to remedy this delay through an injunction requiring the State to provide that treatment within a reasonable period from the date a court transfers a defendant to the custody of DHS's director or a designee to receive treatment. If Plaintiffs can establish the State is violating the due process rights of incompetent defendants, and make their required showing under Rule 65, the court is confident it can fashion an injunction that states its terms specifically and describes in reasonable detail the acts restrained or required. The court is also confident that such an injunction would not require specific relief tailored to each member. The proposed class is cohesive.

The State urges the court to deny Plaintiffs' request for certification of a Rule 23(b)(2) class for the same reason class certification was inappropriate in *Shook II*. There, jail inmates brought a class action seeking declaratory and injunctive relief to address a variety of conditions at the jail alleged to violate the Eighth Amendment rights of inmates with mental health issues.[70] The Tenth Circuit held that the district court was within its discretion when it declined to certify a Rule 23(b)(2) class because "there was no single policy or procedure to which all [plaintiffs] were subject."[71] Indeed, some plaintiffs asserted "claims for denial of medication, some for lack of supervision, and others for use of excessive force."[72]

Here, however, all class members are seemingly held in county jails for extended periods

---

[70] *Shook II*, 543 F.3d at 600.
[71] *Id.* at 603.
[72] *Id.* at 602–03.

after a court declares them incompetent and commits them to the custody of DHS's director or a designee.  It appears this occurs not because the States uses a procedure in which a qualified professional recommends this course of action, but because USH is full.  Moreover, all named Plaintiffs assert claims based on their substantive due process right to be free from conditions or restrictions of confinement that amount to punishment absent a criminal conviction.  *Shook II* poses no barrier to class certification.

Plaintiffs have satisfied Rule 23's requirements.  Class certification is appropriate.

## CONCLUSION

For the reasons stated, the court GRANTS Plaintiffs' Motion to Certify as Class Action and to Appoint Class Counsel.  (Dkt. 18.)

SO ORDERED this 27th day of September, 2016.

BY THE COURT:

_____

ROBERT J. SHELBY
United States District Judge

16